Willie **STOTTS**, Petitioner-Appellant,

v.

E. P. **PERINI**, Superintendent, Marion Correctional Institution, Respondent-Appellee.

No. 19387.

United States Court of Appeals, Sixth Circuit.

June 4, 1970.

Ronald Raitt, Toledo, Ohio, for appellant.

Stephen M. Miller, Columbus, Ohio, Paul W. Brown, Atty. Gen., Stephen M. Miller, Asst. Atty. Gen., Columbus, Ohio, on the brief, for appellee.

Before EDWARDS and McCREE, Circuit Judges, and WILSON, District Judge.*

McCREE, Circuit Judge.

■ This is an appeal from the denial of a petition for a writ of habeas corpus. Petitioner has served a sentence of from one to three years following his conviction for carrying brass knuckles, a concealed weapon under the applicable Ohio statute. Petitioner's action is not mooted by his release from custody, because "disabilities" may still result from the conviction which he is attacking. Carafas v. LaVallee, 391 U.S. 234, 237–240, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

The petition alleges that the search which produced the proscribed implement was conducted in violation of the Fourth Amendment to the United States Constitution, and that the state trial judge should have refused to admit the brass knuckles as evidence at the trial. A timely motion to suppress had been considered by the trial judge, who overruled it without making any written or oral findings. Petitioner appealed his conviction to the Ohio Court of Appeals, which affirmed the judgment of the trial court. State v. Stotts, 8 Ohio App.2d 97, 220 N.E.2d 718 (1966). The Supreme Court of Ohio overruled petitioner's motion for leave to appeal.

After thus exhausting his available state remedies, petitioner sought a writ of habeas corpus in the United States District Court. The District Judge declined to hold an evidentiary hearing and dismissed the petition. We reverse and remand the case to the District Court for the holding of such a hearing.

Two very different factual accounts of the search were before the state trial court. One of the arresting police officers testified that on the night of the arrest, he and his partner approached the car in which petitioner and his companion, Wright, were sitting, to issue a parking ticket. While placing the ticket under the windshield wiper, one of the officers observed that the two passengers were asleep, and that Wright had around his wrist a brown strap which appeared to be the strap of a blackjack. The other officer confirmed the accuracy of this latter observation. They awakened Wright by pounding on the car window and discovered that the strap was indeed attached to a blackjack. At the time he noticed the blackjack strap, one of the officers also saw what appeared to be the outline of a pair of brass knuckles in petitioner's pants pocket. Petitioner was roused, and a search of his person produced the brass knuckles.

Petitioner and Wright tell a different story. They testified they were awake when the officers approached the car. They deny that the officers issued a ticket and no copy of a ticket was produced at trial. They testified that the officers were checking the license number of the car against what appeared to be a list on a clipboard. Then an officer walked to petitioner's side of the car, ordered him to get out, frisked him, and found the brass knuckles. Only after that did the officers search Wright and find the blackjack. During this time, according to both petitioner and Wright, the car windows were not closed, as the officer has testified, but were open, because it was a warm June night.

■ The District Judge examined the state court record and held that he could resolve these factual discrepancies without a hearing. "This Court is of the opinion that the testimony as a whole is sufficiently clear that it can resolve the issue of credibility from the record." The court then proceeded to resolve that issue "in favor of the facts as related by the police officers", and found the search permissible under a combination of the "open view" and "stop and frisk" doctrines. However, despite his stated resolution of the factual dispute, the District Judge apparently did not credit the officer's testimony that he saw the outline

---

* The Honorable Frank W. Wilson, United States District Judge, Eastern District of Tennessee, sitting by designation.

■

of the brass knuckles in petitioner's pocket—a fact which would have upheld the search on the basis of the open view doctrine alone. His reliance on the stop and frisk theory indicates that he believed that petitioner had been searched lawfully because he was in Wright's company when the blackjack was found. However, the record is devoid of any affirmative showing that the officer had that "reasonable apprehension of danger" required to justify a search under Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968).

■ We begin with the observation that if a prior state hearing on the constitutional claim occurred in the course of the original trial, it will usually be proper to assume that the claim was rejected on the merits, even if no opinion was rendered. Townsend v. Sain, 372 U.S. 293, 314, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). However, where there is a complex factual dispute and where there exists more than one legal basis for a disposition on the merits, it may be difficult to determine on which basis [1] the state court denied the claim. In a situation such as this where the state trial court has failed to make express findings which resolve critical factual disputes concerning a claimed constitutional deprivation, and an attempted reconstruction of implicit findings will involve speculation, the federal habeas corpus court must conduct an evidentiary hearing.[2]

■ The state argues, however, that the District Judge's disposition should be upheld because the state courts did fully resolve the factual issues. We disagree. The state trial court made no findings of fact or conclusions of law in deciding the crucial motion to suppress the brass knuckles as evidence. Although the Ohio appellate court attempted to supply the omitted findings and held the search reasonable as incidental to a lawful arrest, the District Judge declined to adopt this determination. His action strongly suggests that he believed that the state court's rationale was not supported by the record of the trial court proceedings and that the search was not incident to a lawful arrest.

The very fact that the District Judge did not rely on the state appellate court's findings (and that there are no findings of the state trial court upon which he could rely) indicates that the state court record may not be sufficiently reliable to provide a basis for disposition of the constitutional issue presented by this petition. Three possible theories, given appropriate factual findings, could justify the search: (1) search incident to a lawful arrest; (2) the open view doctrine; (3) stop and frisk. The limits and validity of at least two of these theories were unclear and imprecise at the time the state trial court made its ruling. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Since, as observed,

---

1. The difficulty of making such a determination here is shown by a reading of the affirming opinion of the Ohio Court of Appeals, *supra*. Its syllabus, which in Ohio states the law of the case, can be read to uphold the search as an incident to a lawful arrest. Nevertheless, the discussion in the body of the opinion does not disclose a basis for the pre-search arrest and appears to support the search under the plain view doctrine.

2. The scope of such a hearing has been discussed by the Supreme Court in the following language:

  On remand it would not, of course, be sufficient for the District Court merely to hear new evidence and to read the state-court record. Where an unresolved factual dispute exists, demeanor evidence is a significant factor in adjudging credibility. And questions of credibility, of course, are basic to resolution of conflicts in testimony. To be sure, the state-court record is competent evidence, and either party may choose to rely solely upon the evidence contained in that record, but the petitioner, and the State, must be given the opportunity to present other testimonial and documentary evidence relevant to the disputed issues. This was not done here. Townsend v. Sain, 372 U.S. 293, 322, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

the trial judge made no findings of fact or conclusions of law, we cannot determine upon what theory he upheld the search. If he had made findings of fact, a reviewing court could determine whether a search based on them was valid. If he had stated conclusions of law, we might consider the necessary supporting findings of fact as having been implicitly made, depending on the state of the evidence. But with neither findings of fact nor conclusions of law, it is entirely possible on the state of this record that the state trial judge applied a legal theory incorrectly, so that his unstated findings of fact would have required suppression of the evidence under the proper rule of law.

The existence of this possibility, together with the lack of factual findings to support the conclusions of the District Court, requires an evidentiary hearing. Further, reliance upon the printed record to resolve credibility assessments where sharp factual discrepancies exist is contrary to the teaching of Townsend v. Sain, *supra*. Accordingly, the judgment of the District Court is reversed and the case is remanded for the holding of an evidentiary hearing.

The court expresses its appreciation to Ronald Raitt, Esq., who represented petitioner without compensation at our request.